The opinion of the court was delivered by
Breaux J.
The records show the following facts:
Some time in the year 1862, plantiff’s brother, as agent of David •Godwin, bought for him in Texas a number of beeves at twenty dollars per head.
In purchasing, herding and driving them he was assisted by his .brother, the plaintiff in the suit.
*519 The latter alleges that while they were in Texas, he also bought two hundred head of beeves and altogether they were driven to .Louisiana; that Godwin was to sell these beeves in the New Orleans markets and account to plaintiff in proportion to the number of beeves he owned.
In southwest Louisiana three hundred of these beeves were sold to the Confederate government and others were afterward bought and placed in the drove (a number about equal to that sold to the Confederate government).
They were pastured in Louisiana' about eight months.
On the trial of the case, before the court a qua, a copy of an affidavit of plaintiff was introduced in evidence, in which he deposed that he and his brother purchased for account of David R. Godwin, and with his money, eighteen hundred and thirty-seven head of Texas beeves.
That they drove them from Texas to Oypremort in the parish of .St. Mary.
While there, they were taken by the Federal army in April, May and June, 1863.
He also deposes, in this affidavit, that they cost, purchase price ,and expenses, $60,000.
There was a claim presented by Godwin against the United States ■government before the Southern Claims Commission in 1866, for the •value of 1200 head of Texas beeves taken' by the Federal army in the •Oypremort, the number remaining of the beeves bought for him by his said agent as before mentioned.
When this claimant was heard before this commission and a trial was had., this affidavit was admitted in evidence.
In addition, at the time, plaintiff testified as follows before the Claims Commission at Washington:
Q,. Have you any interest in this claim?
A. I have not-
Q,. Yon do not expect to recover anything if he recovers?
A. No, sir; I do not.
Q,. He pays you for coming on here; your expenses and time?'
A. He pays my expenses here.
Q. Nothing was said about your being paid in proportion to the amount that was recovered, or anything of that sort?
A- No, sir-
*520 Upon this and other testimony the Claims Commission held, that the claimant should recover the sum of $24,000.
They were paid to him by the government on the 28th of May, 1877.
Plaintiff in the case at bar, in the year 1876, wrote several letters to Godwin, in which he applied for loans and relief, but does not state anything about any claim of his, either actual or prospective, growing out of this beef transaction in the name of Godwin.
In his testimony before the District Court, in this case, plaintiff testifies that he knew, some eight years prior, that the claim against the government for the value of the 1200 beeves had been allowed, but that he was informed by tho claimant that the.amount was not sufficient; that he had applied for an increase. He testifies that Godwin designedly concealed from him that the amount had been paid.
Godwin died in January, 1877.
About nine months after his death plaintiff’s counsel ascertained that the sum allowed by the government had been paid.
This suit was then brought on the trial before the court a qua; the defendant offered, and it was admitted in evidence, a copy of-plaintiff’s affidavit made in 1875, the affidavit admitted before the Claims Commission, also a copy of his testimony before that commission, an abstract from which is copied herein.
In his testimony, plaintiff denies that his evidence before the Claims Commission was correctly reported. Nothing is said about the affidavit.
Serious objections are presented to plaintiff’s claim; at least two in number.
1. The number of cattle taken by the government does not correspond with the number bought.
The number bought for Godwin’s account in Texas was - - 1,791
The number bought for Godwin’s account in Louisiana was - 300
2,091
Sold to the Confederates.......300
Leaving - - ------- 1,791
The Federáis took - - • - - - - - 1,200
There was, therefore, a loss incurred of 591 head.
*521 Plaintiff alleges that they were joint owners in the proportion of one-sixth to ñve-sixths.
The latter proportion of the ownership incurred considerable loss, while the former remained the same, for plaintiff testifies to a right predicated on 200 beeves placed in the drove by him. Nothing is said as to expense or loss.
While possibly there is no necessity of applying the maxim prevailing in mathematics that a solution which leaves a residuum unaccounted for is no solution at all; nevertheless it is remarkable that without agreement as to the proportion in which the losses shall be incurred, one of the owners of joint property bears all the losses while the other incurs none.
The plaintiff has sworn twice that the property was the property of Godwin, and once that he had no interest whatever in the claim.
His testimony before the Southern Claims Commission is not at all reconcilable with his ownership — predicated upon a title dating prior to the time the witness testified.
The evidence before this court establishes conclusively the date as prior.
The witness, in his own behalf as plaintiff, testifies as to acknowledgments made to him personally by Godwin since the case was heard before the Claims Commission.
He is not to be heard who alleges things contrary to each other. Edson vs. Union Bank, 11 An. 710.
1 ‘ The extra judicial statements of deceased persons have always been ranked as the weakest evidence, and when reported to have been made to a single witness — in the]! presence of no one else, generally disregarded.” Succession of Townsend, 40 An. 66.
The ease of Hobbs vs. McLean, 117 U. S. Reports, p. 580, is cited by defendant as authority bearing conclusively in support of his position in this case.
In this case each plaintiff had testified in the suit of Peck against the United States, in which the fund was reserved, that he had no interest, in the claim of Peck, except that he held one of the notes or memoranda made by Peck.
It was held that the plaintiffs were not estopped.
It was exclusively a question of estoppel vel non.
The weight to be given to the testimony was not the question.
In the case at bar plaintiff is not estopped. The defendant can *522 not set up estoppel, for the testimony, as in the case cited, was given in favor of her side of the controversy, which by it has not been enriched or injured. It is a question of the value to be given to testimony. '
In determining the weight to be given to the testimony, that given before the Court of Claims can not be ignored, but must be considered in connection with the testimony given when the present case was tried.
The testimony of the plaintiff, the last is that before the court a qua, is not such as to satisfy this court that the previous testimony should be disregarded and weight given to the last only.
They are statements under oath; one excludes the effect of the other and can not form the basis of a judgment.
Only one other witness testifies with reference to Godwin’s declarations made since his claim was heard before the Court of Claims. He knows that he spoke of aiding the plaintiff, but does not show any intention on the part of Godwin to hold himself bound or the least acknowledgment of an indebtedness.
There was not the least promise made or the most remote ratification of plaintiffs’ claim as alleged. The conversation was casual, the parties had just become acquainted with each other, and it is not in evidence that this witness ever spoke of it to any one afterward, not even to the plaintiff.
In the absence of [ declarations or acknowledgments proven by satisfactory and sufficient evidence, judgment affirmed.